## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **KELSEY BREWER, individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b)** | |
| *Plaintiff,* | |
| **v.** | **COLLECTIVE ACTION COMPLAINT** |
| **SAKE HIBACHI SUSHI & BAR, INC.; HIBACHI & SUSHI JAPANESE, INC.; WEN QIN LU, individually; and AMY CHEN, individually.** | |
| *Defendants.* | |

Kelsey Brewer ("Plaintiff"), individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b), files this complaint against Sake Hibachi Sushi & Bar, Inc. ("Sake"), Hibachi & Sushi Japanese, Inc. ("Hibachi"), Wen Qin Lu ("Lu"), and Amy Chen ("Chen") (collectively, "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended ("FLSA").

### I.    NATURE OF SUIT

1.      This is a collective action brought by Plaintiff on behalf of herself and all others similarly situated under 29 U.S.C. § 216(b) who worked for Defendants as servers and who were paid a direct cash wage of less than $7.25 per hour.

2.      In 1938, Congress passed the FLSA in an attempt to eliminate low wages, long hours, and provide American workers with a wage that would support a minimum standard of

1

living.[1] The purpose of the FLSA is to provide "specific minimum protections to individual workers and to ensure that each employee covered by the Act ... receive[s] '[a] fair day's pay for a fair day's work' and [is] protected from 'the evil of "overwork" as well as "underpay." *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981).

3.      Section 206 of the FLSA requires employers to compensate employees at a rate of not less than the minimum wage, which is currently $7.25 per hour. *See* 29 U.S.C. § 206(a). However, for tipped employees, employers may take a "tip credit" against payment of the full minimum wage in an amount up to $5.12 per hour, using a portion of an employee's tips to satisfy the employer's minimum wage obligations to the employee. *See* 29 U.S.C. § 203(m). The use of the tip credit results in a huge savings to employers who, by utilizing the tip credit, are relieved of their obligation to pay the full minimum wage and can pay employees as little as $2.13 per hour plus tips.

4.      Though, in utilizing the tip credit defense, the FLSA specifically sets forth two conditions that an employer[2] must satisfy: 1) the employer must inform the employee that it will take a tip credit; and 2) the employer must allow its tipped employees to retain all the tips they receive, except those tips included in a lawfully administered tip pool. *Id*. "What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) . . . you may obtain a . . . credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of

---

[1] *See Martinez v. Behring's Bearings Service, Inc*., 501 F.2d 104, 107 (5ᵗʰ Cir. 1974) ("[t]here can be no doubt that the purpose of the FLSA was and is to protect interstate employees by denying their employers the tool of toying with workers' wages when battling in the competitive market.")

[2] *See Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010) (quoting *Bernal*, 579 F.Supp.2d at 808) ("[d]efendants, as the employers, bear the burden of proving that they are entitled to taking tip credits."); *Whitehead v. Hidden Tavern Inc.*, 765 F. Supp. 2d 878, 881-82 (W.D. Tex. 2011) (The burden of proof is not upon plaintiffs under the circumstances of establishing a tip credit.)

the statute, he gets no credit." *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 681 (D. Md. 2012) (quoting, *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977). "Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002)).

5.       Here, Defendants have a policy and practice of paying all their employee servers, including Plaintiff and Collective Members, subminimum hourly wages under the tip credit provisions of the FLSA. However, Defendants failed to follow federal law and violated Section 203(m) – an affirmative defense – in that Defendants unlawfully (1) failed to provide Plaintiff and Collective Members with notice of the tip credit provisions; (2) failed to allow Plaintiff and Collective Members to retain all of their tips; (3) required Plaintiff and Collective Members to contribute a portion of their tips to an illegal tip pool; and (4) required Plaintiff and Collective Members to incur business expenses.

6.       Defendants' illegal practices in violation of the FLSA have resulted in a forfeiture of the "tip credit." Consequently, Defendants are liable to Plaintiff and Collective Members for the full minimum wage for every hour worked during the statutory time period plus all other statutory damages provided for under the FLSA.

7.       Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this action as a collective action under section 216(b) of the FLSA to recover unpaid wages, misappropriated tips, liquidated damages, attorneys' fees, and costs on behalf of herself and all others similarly situated.

## II.     PARTIES

8.     Plaintiff, Kelsey Brewer, is an individual and resident of Texas. Plaintiff was employed by Defendants to work as a server at their location in Mansfield, Texas within the three-year period preceding the filing of this lawsuit. At all relevant times mentioned, Plaintiff was an "employee" of Defendants as defined by the FLSA. Plaintiff has consented to be a party-plaintiff to this action as indicated by the notice of consent that will be filed with the Court.

9.     The Putative Collective Members ("Collective Members") are all individuals who worked as servers for Defendants at one of their restaurant locations in Texas at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage. Collective Members will "opt in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. *See* 29 U.S.C. § 216(b).[3]

10.     At all times hereinafter mentioned, Plaintiff and Collective Members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206, 207.

11.     Defendant, Sake Hibachi Sushi & Bar, Inc. ("Sake") is a Texas corporation and is doing business as Sake Hibachi Sushi & Bar. Defendant Sake operates a full-service restaurant in Mansfield, Texas, that provides Japanese cuisine and specializes in sushi and hibachi grill services. Defendant Sake can be served with process by serving its registered agent, Wen Qin Lu, at 917 BRIDLE PATH, BURLESON, TEXAS 76028.

12.     Defendant, Hibachi & Sushi Japanese, Inc. ("Hibachi") is a Texas corporation and is doing business as Hibachi. Defendant Hibachi operates a full-service restaurant in Burleson,

---

[3] "Collective Members" include all individuals who file a consent to join this lawsuit. This includes the consents of Kenzie Rogers, Mary Kurecka, Hana Yeskoo, and Mitchell Brewer, which will be filed immediately after initiating this action.

4

Texas, commonly known as Hibachi Teppanyaki & Sushi, which specializes in Japanese cuisine with a sushi bar and hibachi grill. Defendant Hibachi can be served with process by serving its registered agent, Wen Qin Lu, at 1170 CORPORATE DRIVE WEST, SUITE 204, ARLINGTON, TEXAS 76006.

13.    Defendant, Wen Qin Lu ("Lu"), an individual, is an owner of Sake Hibachi Sushi & Bar, Inc. and Hibachi & Sushi Japanese, Inc. and is individually liable as an employer as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d). Upon information and belief, Defendant Lu is the president and director of Sake Hibachi Sushi & Bar, Inc. and Hibachi & Sushi Japanese, Inc. Defendant Lu acts directly or indirectly in the interest of Sake Hibachi Sushi & Bar, Inc. and Hibachi & Sushi Japanese, Inc. in relation to its employees (including Plaintiff and Collective Members) by making operational and strategic decisions affecting employees, including decisions affecting employee compensation and permitting employees to work at Sake Hibachi Sushi & Bar, Inc. and Hibachi & Sushi Japanese, Inc. Defendant Lu can be served with process at her residence located at 917 BRIDLE PATH, BURLESON, TEXAS 76028, or wherever she may be found.

14.    Defendant, Amy Chen, an individual, was a part-owner of Sake Hibachi Sushi & Bar, Inc. during the relevant time period and is individually liable as an employer as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d). Defendant Chen acts directly or indirectly in the interest of Sake Hibachi Sushi & Bar, Inc. in relation to its employees (including Plaintiff and Collective Members) by making operational and strategic decisions affecting employees, including decisions affecting employee compensation and permitting employees to work at Sake Hibachi Sushi & Bar, Inc. During the relevant time period, Defendant Chen was responsible for implementing and enforcing Sake's policies regarding employee compensation and tracking of hours worked by Plaintiff and Collective Members. During the relevant time period, Defendant Chen was the

manager of the restaurant and her job duties included but were not limited to, scheduling all employees (including Plaintiff and Collective Members), supervision over all employees and their day-to-day activities (including Plaintiff and Collective Members), handling customer interactions (including complaints and compliments), hiring and firing employees (including Plaintiff and Collective Members), handling cash, directing employee workflow, determining staffing needs, and running the day to day operations of the restaurant. Defendant Chen can be served with process at her residence located at 9310 MOON RIVER DRIVE, ARLINGTON, TEXAS, 76002, or wherever she may be found.

### III.    JURISDICTION AND VENUE

15.    This Court has subject-matter jurisdiction over this matter, which arises primarily under federal law. Specifically, this Complaint asserts claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* Therefore, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

16.    This Court has personal jurisdiction over Defendants because Defendants are each doing business in Texas. Moreover, Defendants are each employing Texas residents, including Plaintiff and Collective Members, to work at Defendants' restaurants located in Texas.

17.    Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391 because each Defendant is a resident of the State of Texas and at least one Defendant is deemed to reside in the Northern District of Texas, Dallas Division. Moreover, venue is proper in the Northern District of Texas because a substantial part of the events or omissions giving rise to the claims asserted occurred in this district. Specifically, Defendants employed Plaintiff and Collective Members to work as servers at Defendants' restaurants located within the State of Texas, including within the Northern District of Texas, Dallas Division.

## IV.    COVERAGE UNDER THE FLSA

18.    At all relevant times, Defendants have each, individually and jointly, been an "employer" of Plaintiff and Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19.    At all relevant times, Defendants have each, individually and jointly, acted, directly or indirectly, in the interest of an employer with respect to Plaintiff and Collective Members.

20.    Specifically, Defendants Wen Qin Lu and Amy Chen control the day-to-day decisions of the restaurants by making strategic, operational and policy decisions, and exerting operational control over its employees. Moreover, Defendants Wen Qin Lu and Amy Chen have the power to hire and fire employees, discipline employees, create and enforce employee policies, and set employee compensation. Therefore, Defendants Wen Qin Lu and Amy Chen are both individually liable as an employer as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d).

21.    At all relevant times, Sake Hibachi & Sushi Bar, Inc., and Hibachi & Sushi Japanese, Inc., have been an "enterprise" within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r), in that Defendants have been, through unified operation or common control, engaged in the performance of related activities for a common business purpose – namely, operating a full-service restaurant offering a Japanese cuisine and specializing in sushi and hibachi grill services – where Plaintiff and Collective Members were employed to work.

22.    At all relevant times, Sake Hibachi & Sushi Bar, Inc., and Hibachi & Sushi Japanese, Inc., have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that

have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

23.    At all relevant times, Plaintiff and Collective Members were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) of Defendants who were all engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207. *See Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 326 - 329 (5th Cir. 1993). Specifically, as part of their employment, Plaintiff and Collective Members handled food and other food service items that were purchased across state lines or traveled in interstate commerce, or both. In addition, Plaintiff and Collective Members regularly served customers dining at Defendants' restaurants who were traveling from out-of-state or across interstate lines. Finally, Plaintiff and Collective Members regularly and frequently processed multiple interstate credit card transactions during every shift they worked.

## V.    FACTS

24.    From approximately March of 2018 until March 19, 2020, Defendants employed Plaintiff Kelsey Brewer to work as a server at Sake Hibachi & Sushi Bar located at 100 West Debbie Lane, Mansfield, Texas 76063. During her employment, Defendants paid Plaintiff Brewer a subminimum hourly wage plus tips.

25.    Defendants employed Plaintiff and other individuals as servers ("Collective Members") within the three-year period preceding the filing of this lawsuit and paid them all a subminimum wage per hour prior to accounting for the receipt of earned tips.

26.    At all times relevant, Plaintiff and Collective Members were Defendants' "employees" as that term is defined by the FLSA and relevant case law. *See e.g.*, *Reich*, 998 F.2d at 327.

27.    As part of the payment scheme that Defendants used to compensate Plaintiff and Collective Members, Defendants paid Plaintiff and Collective Members a subminimum hourly wage while purportedly utilizing the tip credit as a defense to Defendants' obligation to pay the full minimum wage. The use of the tip credit results in huge savings to Defendants because Defendants compensate Plaintiff and Collective Members at the significantly reduced hourly wage of $2.15 – requiring customers to bear the large burden of directly compensating Plaintiff and Collective Members in the form of tips.

28.    Defendants imposed a tip credit upon all their tipped employees, including Plaintiff and the Collective Members.

29.    For instance, during the three-year period preceding the filing of this lawsuit, Defendants employed Plaintiff Brewer as a server and paid her $2.15 per hour prior to accounting for the receipt of earned tips. Defendants then purported to rely on the tips Plaintiff Brewer earned by applying at least $5.10 per hour to bring Plaintiff Brewer's effective rate of pay, with tips included, up to the required minimum wage of $7.25.

30.    In utilizing the tip credit defense, the FLSA specifically sets forth each of the conditions that the employer must satisfy: 1) the employer must inform the employee that it will take a tip credit; and 2) the employer must allow its tipped employees to retain all of their tips, except those tips included in a lawfully administered tip pool. *See* 29 U.S.C. § 203(m).

31.    Plaintiff and Collective Members have been victimized by Defendants' payment scheme that violates the FLSA. Specifically, Defendants violated Section 203(m), an affirmative

defense, by (1) not providing Plaintiff and Collective Members with notice of the tip credit; (2) not allowing Plaintiff and Collective Members to retain all of their tips; (3) requiring Plaintiff and Collective Members to contribute a portion of their tips to an illegal tip pool; and (4) requiring Plaintiff and Collective Members to incur business expenses.

32.    Defendants did not inform Plaintiff and Collective Members of the provisions of the tip credit, violating *condition one* of 29 U.S.C. § 203(m). *See* 29 C.F.R. § 531.59(b). If the employer fails to adhere to the very specific requirements of the FLSA, the employer loses its right to avail itself of the tip credit. *See Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992) (stating that if the penalty for failing to adhere to the FLSA's notice provisions of the tip credit seems harsh, "it is also true that notice is not difficult for the employer to provide.")

33.    In addition, Plaintiff and Collective Members were required to contribute a percentage of their sales from every shift to a tip pool. From this tip pool, Defendants retained a portion of the tips and Defendants did not redistribute the tip pool solely among other customarily and regularly tipped employees.

34.    Defendants retained portions of the tips that Plaintiff and Collective Members contributed to the tip pool. Specifically, Defendants retained some of the tips from the tip pool.

35.    In addition, Defendants distributed a portion of the tips Plaintiff and Collective Members contributed to the tip pool to employees who were not customarily and regularly tipped employees. For instance, though a portion of the tips that Plaintiff and Collective Members contributed to the tip pool were purportedly earmarked for the busser, the busser did not receive these tips. Instead, Defendants paid the bussers a flat hourly wage, regardless of the amount of tips Plaintiff and Collective Members contributed to the tip pool.

36.     Additionally, Defendant Amy Chen, a salaried manager at Sake Hibachi & Sushi Bar with the power to hire and fire employees, set work schedules, and perform other managerial duties as described above, received a portion of the tips that Plaintiff and Collective Members contributed to the tip pool.

37.     Defendants' pattern and practice of retaining tips from the tip pool and distributing tips from the tip pool to employees who are not customarily and regularly tipped employees is a violation of the FLSA, resulting in Defendants' forfeiture of the tip credit. *See Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)) ("[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'"); *Bernal v. Vankar Enterprises, Inc.*, 579 F. Supp. 2d 804, 808 (W.D. Tex. 2008) (Where management employees participate in a tip pool, the pool is invalid).

38.     Because Defendants required Plaintiff and Collective Members to share tips with employees who may not lawfully participate in a tip pool, Defendants failed to adhere to *condition two* of 29 U.S.C. § 203(m) and have thus violated the minimum wage as cited in 29 U.S.C. § 206. Therefore, Defendants are disavowed from using the tip-credit as a defense to the payment of the full minimum wage.

39.     Furthermore, while utilizing the tip credit, Defendants required Plaintiff and Collective Members to pay for various business expenses including uniforms, walked tabs, and cash register shortages.

40.     Defendants' pattern and practice of requiring Plaintiff and Collective Members to incur these business expenses violates federal law as such is a retention of tips and further violates *condition two* of 29 U.S.C. § 203(m). *See e.g., Mayhue's Super Liquor Stores, Inc. v. Hodgson*,

464 F.2d 1196, 1199 (5th Cir. 1972) (holding that a general deduction for cash register shortages tends to "shift part of the employer's business expense to the employees" and is impermissible if the deduction drops cuts into the statutory minimum wage); *Reich v. Priba Corp*., 890 F. Supp. 586, 596 (N.D. Tex. 1995) ("[t]he FLSA does not permit an employer to transfer to its employees the responsibility for the expense of carrying on an enterprise."); 29 C.F.R. 531.3(d)(1), (2); 29 C.F.R. 531.32(c); *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554-55 (6th Cir. 1999); *see also Herman v. Collis Foods, Inc.*, 176 F.3d 912, 918 (1999) (recognizing "the FLSA's policy of preventing employers from exploiting § 203(m) deductions for profit.").

41.    Finally, Defendants' method of paying Plaintiff and Collective Members in violation of the FLSA was not based on good-faith and a reasonable belief that its conduct complied with the FLSA. Therefore, an award of liquidated damages is mandatory.

42.    Defendants' method of paying Plaintiff and Collective Members in violation of the FLSA was willful and was not based on good-faith or reasonable belief that its conduct complied with the FLSA. Therefore, a three-year statute of limitations applies due to the willful nature of the violations. 29 U.S.C. § 255(a).

43.    During the three-year period prior to this suit, Defendants have employed individuals who performed similar job duties under a similar payment scheme as was used to compensate Plaintiff. Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this action as a collective action under § 216(b) of the FLSA to recover unpaid wages, liquidated damages, attorneys' fees, and costs on behalf of himself and all others similarly situated.

## VI.    COLLECTIVE ACTION ALLEGATIONS

44.    The foregoing paragraphs are fully incorporated herein.

45.     Plaintiff brings this FLSA claim as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) (the "Collective Action"). In addition to the claims of the Named Plaintiff, Plaintiff brings this action as a representative of all similarly situated former and current employees of Defendants. The proposed collective of similarly situated employees ("Collective Members") sought to be certified pursuant to 29 U.S.C. § 216(b), is defined as:

> **All individuals who worked as servers for Defendants in Texas at any time during the three (3) year period preceding the filing of this lawsuit and who were paid a direct cash wage of less than minimum wage.**

46.     FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

47.     Other employees have been victimized by Defendants' common pattern, practice, and scheme of paying their servers in violation of the FLSA. Plaintiff is aware of other employees who were paid in the same unlawful manner as Plaintiff. Plaintiff is aware that the illegal practices or policies of Defendants have been uniformly imposed on other servers who worked for Defendants. Specifically, Plaintiff is aware of other servers who were required to pay for business expenses and who contributed tips to the same tip pool in which Defendants illegally retained a portion of the tips.

48.     Plaintiff and Collective Members have the same pay structure, have the same job duties, were required to participate in the tip pool from which a portion of the tips were distributed to ineligible participants, were required to pay for non-203(m) items, and were required to perform non-tipped duties while being paid at the subminimum "tipped wage." Plaintiff and Collective Members are all victims of Defendants' unlawful compensation scheme.

49.     Plaintiff and the Collective Members are all non-exempt for purposes of minimum wage payments under the FLSA.

50.     Defendants' failure to pay minimum wage pursuant to the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Collective Members. Plaintiff's experiences regarding pay is typical of the experiences of the Collective Members.

51.     Although the exact amount of damages may vary among Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The Collective Members' claims arise from a common nucleus of facts. Specifically, Defendants' systematic course of illegal conduct in violation of the FLSA's minimum wage requirements caused harm to Plaintiff and Collective Members.

### VII.     CAUSE OF ACTION NO. 1: MINIMUM WAGE VIOLATIONS UNDER THE FAIR LABOR STANDARDS ACT

52.     The foregoing paragraphs are fully incorporated herein.

53.     Defendants' failure to pay Plaintiff and Collective Members at the full minimum wage rate is a violation of the FLSA's minimum wage requirement. *See* 26 U.S.C. § 206.

54.     During the relevant time period, Defendants have violated and are violating the provisions of Section 6 of the FLSA, 29 U.S.C. § 206, and 215(a)(2), by employing Plaintiff and Collective Members in an enterprise engaged in commerce or in the production of commerce within the meaning of the FLSA, as aforesaid, and failing to pay such employees at the minimum wage rate.

55.     Defendants failed to pay Plaintiff and Collective Members the full minimum wage according to the provisions of the FLSA for each hour and workweek that Plaintiff and Collective Members worked for Defendants during the statutory time period in violation of 29 U.S.C. § 206(a).

14

56.    In addition, to the extent Defendants intend to rely on the "tip credit" as an affirmative defense to the payment of minimum wage, Defendants have violated the tip credit by: (1) not providing Plaintiff and Collective Members with notice of the tip credit; (2) not allowing Plaintiff and Collective Members to retain all of their tips; (3) requiring Plaintiff and Collective Members to contribute a portion of their tips to an illegal tip pool; and (4) requiring Plaintiff and Collective Members to incur business expenses.

57.    Defendants' illegal practices in violation of the FLSA have resulted in Defendants' forfeiture of the tip credit, and therefore, Defendants are precluded from relying on tips to supplement Plaintiff's and Collective Members' subminimum hourly rate. Consequently, Defendants are liable to Plaintiff and the Collective Members for the full minimum wage for every hour worked during the statutory time period plus all other statutory damages provided for under the FLSA.

58.    At all times relevant, Defendants compensated Plaintiff and Collective Members less than the federally mandated minimum wage of $7.25 per hour. None of the exemptions or defenses provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants, Plaintiff, or Collective Members.

59.    Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this lawsuit as a collective action under § 216(b) of the FLSA to recover unpaid wages, misappropriated tips, liquidated damages, attorneys' fees, and costs on behalf of herself and the Collective Members.

### VIII.   CAUSE OF ACTION NO. 2: UNLAWFUL KICKBACKS UNDER
### THE FAIR LABOR STANDARDS ACT

60.     Plaintiff incorporates by reference the previous paragraphs of the Complaint.

61.     The business expenses that Defendants required Plaintiff and Collective Members to pay for and the mandatory tip-outs that Defendants required from Plaintiff and Collective Members constitute unlawful "kick-backs" to an employer, which is proscribed by the FLSA, 29 U.S.C. § 203(m).

62.     In addition, section 203(m)(2) provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

63.     The unlawful kickbacks received or required by Defendants were obtained knowingly, willfully, intentionally, or in bad faith.

64.     Plaintiff and Collective Members are entitled to an award of back pay for all unlawful kickbacks required by Defendants.

### IX.     DAMAGES SOUGHT

65.     The foregoing paragraphs are fully incorporated herein.

66.     Plaintiff and Collective Members are entitled to recover compensation for every hour worked at the federally mandated minimum wage rate of $7.25 per hour plus an equal amount as liquidated damages.

67.     Plaintiff and Collective Members are entitled to reimbursement of all misappropriated tips plus an equal amount as liquidated damages.

16

68.    Plaintiff and Collective Members are entitled to all their misappropriated funds, including repayment of all expenses Defendants required Plaintiff and Collective Members' to incur plus an equal amount as liquidated damages.

69.    Plaintiff and Collective Members are entitled to an amount equal to all unpaid wages found due (including all of their misappropriated tips and unlawful expenses incurred) as liquidated damages because Defendants' actions were not based upon good faith. *See* 29 U.S.C. § 216(b).

70.    Plaintiff and Collective Members are entitled to recover damages for the past three (3) years because Defendants violations were willful.

71.    Plaintiff and Collective Members are entitled to recover their attorneys' fees and costs as required by the FLSA. *See* 29 U.S.C. § 216(b).

## X.    PRAYER

72.    Plaintiff and Collective Members pray for judgment against Defendants, jointly and severally, as follows:

A.    For an order pursuant to Section 216 of the FLSA finding Defendants liable for unpaid wages (including all misappropriated tips and all unlawful expenses incurred) due to Plaintiff (and those who join in the suit), and for liquidated damages equal in amount to the unpaid minimum wages (including all misappropriated tips and paid business expenses) due to Plaintiff (and those who join in the suit);

B.    For an order awarding Plaintiff (and those who join in the suit) an amount of pre-judgment interest, as may be appropriate, and post-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

C.    For an order awarding Plaintiff (and those who join in the suit) all attorneys' fees incurred;

D. For an order awarding Plaintiff (and those who join in the suit) all costs and expenses incurred in pursuing this action; and

E. For an order granting any such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

By: _/s/ Drew N. Herrmann_
      Drew N. Herrmann
      Texas Bar No. 24086523
      _drew@herrmannlaw.com_
      Pamela G. Herrmann
      Texas Bar No. 24104030
      _pamela@herrmannlaw.com_
      **HERRMANN LAW, PLLC**
      801 Cherry St., Suite 2365
      Fort Worth, TX 76102
      (817) 479-9229 – telephone
      (817) 887-1878 – fax

      -AND-

      **LAW OFFICE OF JERRY MURAD**
      Jerry Murad, Jr.
      Texas Bar No. 00784654
      _jerrymurad@mac.com_
      P.O. Box 470067
      Fort Worth, Texas 76147
      817-335-5691 – telephone
      817-870-1162 – fax

      ATTORNEYS FOR PLAINTIFF
      AND COLLECTIVE MEMBERS