IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELSEY BREWER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED UNDER 29 U.S.C. § 216(b), PLAINTIFF, | § § § § § | |
| v. | § § | CIVIL CASE NO. 21-CV-151-L-BK |
| SAKE HIBACHI SUSHI & BAR, INC., HIBACHI & SUSHI JAPANESE, INC., WEN QIN LU, AND AMY CHEN, DEFENDANTS. | § § § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 27, this case is before the Court for consideration of Defendants' separate *Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)*. Doc. 10; Doc. 12; Doc. 14; Doc. 16. For the reasons that follow, Defendants' motions should be **DENIED**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

In January 2021, Plaintiff filed this putative collective action under the Fair Labor Standards Act ("FLSA") against Hibachi & Sushi Japanese, Inc. ("Hibachi") and Sake Hibachi Sushi & Bar, Inc. ("Sake"), as well as their owner, Wen Qin Lu ("Lu"), and Amy Chen ("Chen") who co-owns and manages Sake. Doc. 1 at 5-6. Plaintiff avers that when she worked as a server at Sake, Defendants utilized the FLSA's "tip credit" provision, but willfully failed to comply with all of the attendant duties such as providing Plaintiff with sufficient notice, not allowing her to retain all of her tips, and requiring her and other potential

collective action members to contribute to an illegal "tip pool" as well as pay various business expenses. Doc. 1 at 3-5, 9-12.

Plaintiff claims Defendants have thus forfeited the tip credit and are liable to Plaintiff and others for the full minimum wage for every hour they worked during the statutory period, plus any other statutory damages provided for under the FLSA. Doc. 1 at 3, 14-15. Plaintiff brings causes of action for Defendants' violations of the minimum wage law and collection of unlawful kickbacks. Doc. 1 at 14-16. Plaintiff further alleges that Lu and Chen, as employers, are individually liable for the FLSA violations. Doc. 1 at 7. Finally, she asserts that Sake and Hibachi fall within FLSA enterprise coverage and that she is covered individually as well. Doc. 1 at 7-8. Defendants now move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 10; Doc. 12; Doc. 14; Doc. 16. If the Court determines that Plaintiff's complaint is subject to dismissal, she requests leave to amend. Doc. 22 at 15-16.

## II. APPLICABLE LAW

### A. FLSA

The FLSA imposes both a minimum wage and maximum hours restriction on employers. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (citing 29 U.S.C. §§ 206-207). As relevant here, the FLSA sets the national minimum wage at $7.25 per hour. *Montano v. Montrose Rest. Assoc., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015); 29 U.S.C. § 206(a)(1). A plaintiff attempting to make an overtime compensation claim under the FLSA must establish four elements: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in

activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Resources (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

The FLSA contains an exception to the $7.25 hourly minimum wage, however, which allows employers to pay $2.13 per hour to a "tipped employee" if the employee's tips compensate for the difference between the $2.13 minimum wage and the general minimum wage. *Montano*, 800 F.3d at 189 (citing 29 U.S.C. § 203(m)). This employer "discount" is commonly referred to as a "tip credit." *Id.* An employer may not claim a tip credit unless either the tipped employee receives all of the tips or all tips are pooled among employees who customarily and regularly receive tips. *Id.* at 188. If an employee is otherwise required to share tips, the employer may not legally use a tip credit. *Id.* at 189; *see also* 29 U.S.C. § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.").

The FLSA's minimum wage and maximum hours requirements only apply, however, if either the employee or the employing business enterprise is engaged in commerce or in the production of goods for commerce. 29 U.S.C. §§ 206(a), 207(a)(2); *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 785-86 (5th Cir. 2020) (citations omitted). These theories of recovery are referred to as individual coverage and enterprise coverage, respectively. For both types of FLSA coverage, "commerce" means "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

3

For an employee to qualify as being "engaged in commerce" under the FLSA's individual coverage provision, the employee's work must be "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it rather than isolated local activity." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (quoting *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 324 (1960)). Employees are considered engaged "in the production of goods for commerce" if they are involved with any "incidental operation preparatory to putting goods into the stream of commerce" such as packaging a product, bottling liquid, or labeling goods. *Western Union Tel. Co. v. Lenroot*, 323 U.S. 490, 503 (1945).

Concomitantly, to demonstrate enterprise coverage, a business must either "ha[ve] employees engaged in commerce or in the production of goods for commerce" or "ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." *Molina-Aranda*, 983 F.3d at 786 (citation and internal punctuation omitted). The enterprise's annual gross volume of sales made or business done also must not be less than $500,000. *Biziko v. Van Horne*, 981 F.3d 418, 420 (5th Cir. 2020). The difference between the two theories is that in the individual coverage analysis, the question is whether the plaintiff herself engaged in interstate commerce, whereas in the enterprise coverage analysis, the question is whether any two or more of the business's other employees engaged in interstate commerce. *Mendoza v. Detail Sols., LLC*, 911 F.Supp.2d 433, 439 n.4 (N.D. Tex. 2012)

### B. Rule 12(b)(6)

A plaintiff fails to state a claim under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). When considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims.

### III. PARTIES' ARGUMENTS AND ANALYSIS

#### A. Hibachi and Sake – Enterprise Coverage

Hibachi and Sake assert first that Plaintiff—and the purported opt-in plaintiffs—lack "case-or-controversy" standing because Hibachi did not employ them, and Plaintiff did not adequately plead that Sake employed her. Doc. 11 at 3-6; Doc. 13 at 10, 14-15. Alternatively, Hibachi and Sake argue that Plaintiff has failed to adequately allege that an "enterprise" existed between them as required establish enterprise coverage under the FLSA. Doc. 11 at 6-8; Doc. 13 at 12-14. In particular, Hibachi and Sake assert that Plaintiff has not sufficiently pleaded that Hibachi and Sake (1) were engaged in related activities, (2) were a unified operation or under common control, and (3) shared a common business purpose. Doc. 11 at 6-8; Doc. 13 at 13-14.

Plaintiff responds that the term "employer" is defined broadly in the FLSA context. Doc. 22 at 7-10 (citing 29 U.S.C. § 203(d) ("Employer" includes "any person acting directly or indirectly in the interest of an employer")); Doc. 23 at 9. Plaintiff contends that whether she or any of the collective plaintiffs were employed by Hibachi, i.e., whether Hibachi and Sake are joint employers for purposes of the FLSA, is a fact-specific question not appropriate for resolution at the motion to dismiss stage. Doc. 22 at 5-12; Doc. 23 at 8. Moreover, Plaintiff claims that she has sufficiently alleged the required enterprise theory elements, namely (1) unified operations; (2) under common control; (3) that engaged in related activities and share a common business purpose; (4) Sake and Hibachi have employees handling goods that have been moved in interstate commerce; and (5) Sake and Hibachi have sales of at least $500,000.00. Doc. 22 at 12-15; Doc. 23 at 11-14. Plaintiff also asserts that she has adequately alleged FLSA enterprise coverage by specifying that Hibachi and Sake (1) have employees handling goods that have been moved in interstate commerce and (2) are doing the requisite dollar amount of sales. Doc. 22 at 13-15.

Turning to the sufficiency of Plaintiff's allegations, the Court concludes that she has adequately pled that (1) Defendants violated the FLSA by failing to pay her the required minimum wage due to their misuse of the tip credit by, for example, requiring that servers participate in a tip pool, but distributing tips to persons who are not customarily and regularly tipped employees, such as Chen who is a salaried manager, Doc. 1 at 9-12; and (2) she lost wages as a result of the FLSA violation, Doc. 1 at 13-14; *Molina-Aranda*, 983 F.3d at 788. The closer question is whether Plaintiff has successfully alleged that she engaged in activities within the FLSA enterprise coverage theory.

In that respect, Plaintiff alleges Lu and Chen "control the day-to-day decisions" for Sake and Hibachi, which entities are jointly "engaged in the performance of related activities for a common business purpose – namely, operating a full-service restaurant offering a Japanese cuisine and specializing in sushi and hibachi grill services." Doc. 1 at 7. Regarding the commerce element, Plaintiff avers that she and the proposed collective action members:

> [H]andled food and other food service items that were purchased across state lines or traveled in interstate commerce, or both. In addition, Plaintiff and Collective Members regularly served customers dining at Defendants' restaurants who were traveling from out-of-state or across interstate lines. Finally, Plaintiff and Collective Members regularly and frequently processed multiple interstate credit card transactions during every shift they worked.

Doc. 1 at 8.

This case is similar to *Molina-Aranda*. There, the United States Court of Appels for the Fifth Circuit held the plaintiffs adequately alleged enterprise coverage by asserting that (1) the defendants employed multiple drivers to haul water, sand, gravel, and construction supplies both into and out of the state and (2) the plaintiffs worked with equipment that had moved in or been produced for commerce. *Molina-Aranda*, 983 F.3d at 786. The court concluded:

> [A]t least some of these items are plausibly goods or materials: they are all items one could plausibly conclude are used in or produced during construction and trucking work. It is also plausible that some or all of these items had travelled interstate at some point in their life cycle. Texas is a large state with considerable industrial capacity, but it does not stretch the definition of plausible for Plaintiffs to allege that at least some of the raw materials and machinery that they handled came from beyond Texas's borders.

*Id.* at 787 (cleaned up). The same result is warranted here. Plaintiff has adequately alleged enterprise coverage via her allegations that she handled food and food service items which plausibly could have been moved in or produced for interstate commerce. *Id.*; *see also Sandles v. Wright*, No. 1:12-CV-309, 2013 WL 5497788, at *7 (E.D. Tex. Oct. 3, 2013) (considering, *inter alia*, processing of credit card payments electronically across state lines in determining whether plaintiff established the commerce requirement in the individual FLSA coverage context).

    B.    *Sake, Lu, Chen – Individual Coverage*

These Defendants contend that Plaintiff has failed to demonstrate individual FLSA coverage because she has not sufficiently alleged that she was engaged in commerce or in the production of goods for commerce. Doc. 13 at 16-19; Doc. 15 at 15-17; Doc. 17 at 15-17. Plaintiff argues she has adequately alleged individual FLSA coverage, vis a vis engaging in commerce because she pled that she (1) handled food and food service items that were purchased across state lines and/or traveled in interstate commerce; (2) regularly served out-of-state customers dining at Defendants' restaurants; and (3) frequently processed interstate credit card transactions. Doc. 23 at 17; Doc. 24 at 18-19; Doc. 25 at 18-19.

As discussed above, employees are considered engaged "in the production of goods for commerce" if they are involved with any "incidental operation preparatory to putting goods into the stream of commerce." *Western Union Telegraph Company v. Lenroot*, 323 U.S. 490, 503 (1945). However, "the test of whether one is *in commerce* is obviously more exacting than the test of whether [an] occupation is necessary to production for commerce." *Armour & Company v. Wantock,* 323 U.S. 126, 131 (1944) (emphasis added). The "in

8

commerce" clause requires the court to consider whether the work Plaintiff performed is directly related to the "functioning of an instrumentality or facility of interstate commerce." *Sobrinio,* 474 F.3d at 829; *see also McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943) (stating that the test for individual FLSA coverage is whether the employee's activities "are actually in or so closely related to the movement of the commerce as to be a part of it"). Thus, it is not sufficient "for purposes of the 'engaged in commerce' clause of the individual coverage provision, that an employee's work merely 'affects' interstate commerce in some way." *Mendoza,* 911 F.Supp.2d at 439 (quoting *Wirtz v. Wohl Shoe Co.,* 382 F.2d 848, 850 (5th Cir. 1967)). Nonetheless, the Fifth Circuit has also held that "[t]here is no *de minimis* requirement." *Sobrinio,* 474 F.3d at 829. "'[A]ny regular contact with commerce, no matter how small, will result in coverage.'" *Sobrinio*, 474 F.3d at 829 (quoting *Marshall v. Victoria Transp. Co., Inc*., 603 F.2d 1122, 1124 (5th Cir. 1979)); *Sandles v. Wright*, 1:12-CV-309, 2013 WL 5497788, at *7 (E.D. Tex. Oct. 3, 2013) (holding that processing credit card payments for out-of-state campers, plus receiving and making out-of-state telephone calls related to booking reservations or contacting out-of-state campers for other reasons and handling interstate mail was sufficient to show that Defendant was engaged in commerce).

In *Sobrinio*, an employee of a motel that served the Texas Medical Center worked variously as a janitor, security guard, and driver for the motel's guests. 474 F.3d at 829. While he drove guests on local errands, he never drove to the airport or any other transportation centers. *Id.* The court held that although many guests were from out of state, the employee was not "engaged in commerce" under the FLSA's individual coverage provision. *Id.* (citation omitted). Similarly, a judge in this district held that an employee's

9

washing of cars which had allegedly been moved in interstate commerce was not closely related to the movement of those cars in commerce for purposes of FLSA individual coverage. *Mendoza*, 911 F.Supp.2d at 440 (on summary judgment). To that end, the court observed that the plaintiff did not utilize any instrumentalities of interstate commerce in the performance of his job, such as computers or telephones, and presented no evidence of where the cars he washed were manufactured. *Id.*; *see also Williams v. Henagan*, 595 F.3d 610, 621 (5th Cir. 2010) (holding that plaintiff's work mowing lawns and setting up inflatable playgrounds was "localized" and did not qualify as "engaged in commerce"); *Romero v. Funes*, No. H-11-3373, 2013 WL 655250 at *2 (S.D. Tex. Feb. 21, 2013) (holding that plaintiff working as a local security guard was not "personally engaged in commerce.").

In a somewhat recent decision, a judge of this court ruled on a similar issue as the one presented here. *See Ecoquij-Tzep v. Hawaiian Grill*, No. 3:16-CV-625-BN, 2016 WL 8674569, at *4 (N.D. Tex. Dec. 16, 2016) (Horan, J.). There, the plaintiff averred that during his employment with the defendant, he worked as a cashier and server and (1) "the materials and goods that Plaintiff handled and/or used on a constant and/or continual basis and/or that were supplied to Plaintiff by the Defendant to use on the job moved through interstate commerce prior to and/or subsequent to Plaintiff's use of the same" and (2) he regularly processed credit card payments for out-of-state customers. *Id.* The Court concluded that these allegations were insufficient to establish individual coverage and "the mere usage of credit cards is insufficient for purposes of establishing FLSA individual coverage." *Id.* (quoting *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266-67 (11th Cir. 2006)); *see also Ovalle v. DRG Concepts, LLC*, 3:17-CV-2714-G, 2018 WL 2762553, at *4 (N.D. Tex.

June 8, 2018) (Fish, J.) (holding insufficient to state an individual FLSA claim allegations that the plaintiff waiter "engaged with [the] [d]efendant's customers, ran credit cards and handled other forms of payment for [the] [d]efendant, and generally engaged in commerce on [the] defendant's behalf.").

The Court finds *Ecoquij-Tzep* and *Ovalle* distinguishable and concludes that Plaintiff has adequately pled that she engaged in commerce. Specifically, Plaintiff alleges that she:

> *[H]andled food and other food service items* that were purchased across state lines or traveled in interstate commerce, or both. In addition, Plaintiff . . . regularly served customers dining at Defendants' restaurants who were traveling from out-of-state or across interstate lines. Finally, Plaintiff . . . regularly and frequently processed multiple interstate credit card transactions during every shift they worked.

Doc. 1 at 8 (emphasis added). Although she could have been more specific about the nature of the food and service supplies she references, on balance, the Court concludes that Plaintiff has adequately pled individual FLSA coverage. See *Sandles*, 2013 WL 5497788, at *7.

C.   *Lu and Chen — Employer Status*

Lu and Chen argue that Plaintiff failed to plead sufficient factual allegations to establish their employer status and, thus, individual liability under the FLSA. Doc. 15 at 12-15; Doc. 17 at 12-15. Plaintiff disagrees, pointing out that she pled Lu owns and is the president and director of both Hibachi and Sake, Chen is the co-owner of Sake, and both defendants make operational decisions for the restaurants such as employee hiring, compensation, termination, and discipline and creating and enforcing employee policies. Doc. 24 at 15-16; Doc. 25 at 15.

As relevant here, the FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The

11

Fifth Circuit relies on the "economic reality test" when determining whether a party is an employer within the meaning of FLSA. *See, e.g.*, *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). Under that test, the court evaluates "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 355 (citation and internal quotation marks omitted). A party need not, however, establish each element in every case. *Id.* at 357. "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Id.* Moreover, "[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam) (citation omitted).

A review of Plaintiff's complaint supports her argument in favor of Lu's and Chen's status as employers. *See* Doc. 1 at 7 ("Defendants Wen Qin Lu and Amy Chen control the day-to-day decisions of the restaurants by making strategic, operational, and policy decisions, and exerting operational control over its employees. Moreover, Defendants Wen Qin Lu and Amy Chen have the power to hire and fire employees, discipline employees, create and enforce employee policies, and set employee compensation."). This is sufficient to plead claims against both Lu and Chen for purposes of individual FLSA liability. *See Gray*, 673 F.3d at 355. Indeed, another judge of this Court has reached an identical conclusion with regard to similar arguments made by Lu and Chen in a FLSA case involving claims similar to

those here. *See Williams v. Sake Hibachi Sushi & B., Inc.*, 3:18-CV-0517-D, 2020 WL 3317096, at *6-8 (N.D. Tex. June 18, 2020) (Fitzwater, J.) (granting summary judgment for plaintiffs on this point).

    D.    *Lu and Chen and — Minimum Wage Violation*

Lu and Chen next argue that Plaintiff has inadequately pled that they violated FLSA's minimum wage requirements in relation to the tip credit provision. Doc. 15 at 17-18; Doc. 17 at 13-14. Plaintiff responds that she has sufficiently pled minimum wage violations and detailed why Lu and Chen are not entitled to the tip credit defense. Doc. 24 at 19-22; Doc. 25 at 19-22.

Generally, the "tip credit" exception can only be claimed if the employer demonstrates that (1) she informed the employees of the tip credit law and (2) the tipped employees retain all of their tips. 29 U.S.C. § 203(m). The employer "has the burden of establishing its entitlement to the tip credit." *Montano*, 806 F.3d at 189. The problem with Lu's and Chen's argument is readily apparent. The FLSA's tip credit provision is a defense to a minimum wage claim. *Gustavus v. Cazos, Inc*., 774 F.Supp.2d 856, 858 (S.D. Tex. 2011) ("Since the use of a tip credit is an affirmative defense, the defendants bear the burden of proof on this issue."); *Williams*, 2020 WL 3317096, at *3 (referring to tip credit as an affirmative defense). Plaintiff has adequately pled a minimum wage violation and need not defend against an affirmative defense at this stage of the case. Moreover, to the extent Lu and Chen maintain Plaintiff's complaint is deficient because she failed to allege the approximate number of hours

13

of work for which she was underpaid, that issue is appropriately left to summary judgment or trial.[1]

## IV. CONCLUSION

For the foregoing reasons, Defendants' *Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)* should be **DENIED**.

**SO RECOMMENDED** on January 19, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's findings, conclusions, and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

---

[1] Sake, Lu, and Chen's arguments urging dismissal of Plaintiff's kickback claim are also based on the premise that she did not adequately defend against the tip credit exception. *See* Doc. 13 at 20-23; Doc. 15 at 18-22; Doc. 17 at 18-22. The Court thus rejects this argument for the same reasons stated above.

14